Filed 4/8/13  Trabert v. Consumer Portfolio Services CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SHAUN TRABERT, | D060491 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2010-00096763-CU-BT-CTL) |
| CONSUMER PORTFOLIO SERVICES, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, John S.

Meyer, Judge.  Reversed with directions.

Consumer Portfolio Services, Inc. (Portfolio) appeals an order denying its petition

to compel arbitration of its lawsuit with Shaun Trabert.  Portfolio contends the court erred

by determining the arbitration clause in an automobile purchase contract was unconscionable and therefore unenforceable. We reverse with directions.[1]

FACTUAL AND PROCEDURAL BACKGROUND

In August 2008, Trabert purchased a used 2007 Chevrolet Malibu from a Honda dealer under an installment sale contract requiring Trabert to make monthly payments. The total purchase price of the vehicle was $16,709.87. Trabert made a downpayment of $1,500, and the remainder was financed by the dealer at 18.45 percent interest. The dealer then assigned the contract to Portfolio.

Portfolio later repossessed the vehicle when Trabert stopped making the monthly payments. After Portfolio provided Trabert with a statutory notice of intent to sell the vehicle (NOI), Portfolio sold the vehicle and then sought a deficiency balance of approximately $6,900.

On July 2010, Trabert filed a class action complaint alleging that Portfolio failed to provide notices required by law, including a proper NOI. Trabert alleged Portfolio violated the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) and the Unfair Competition Law (Bus. & Prof. Code, § 17200). Trabert sought to represent a class of California residents whose vehicles were repossessed by, or surrendered to, Portfolio, and against whom Portfolio had asserted a deficiency claim.

---

[1] Many of the same legal issues in this case are before the California Supreme Court in two pending cases. (*Sanchez v. Valencia Holding Co*., LLC (2011) 201 Cal.App.4th 74, review granted Mar. 21, 2012, S199119 (*Sanchez*); *Goodridge v. KDF Automobile Group, Inc*. (2012) 209 Cal.App.4th 325, review granted Dec. 19, 2012 [briefing deferred pending *Sanchez case*].) This case involves the same form contract that was at issue in the *Sanchez* and *Goodridge* cases.

2

Several months later, Portfolio moved to compel arbitration based on an arbitration clause in Trabert's purchase agreement. Portfolio attached a copy of the agreement, which was a single sheet about 26 inches long with numerous provisions in small print on the front and back side. The arbitration provision is located on the bottom of the back side and is outlined in black lines, as are several other provisions. The arbitration provision is printed in at least 8-point type. Trabert signed the contract on about 10 places on the front side, but there are no signatures or initials by Trabert on the back of the contract.

The arbitration provision reads as follows:

"ARBITRATION CLAUSE
PLEASE REVIEW-IMPORTANT-AFFECTS YOUR LEGAL RIGHTS

"1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.
"2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.
"3. DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

"Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Clause, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Clause shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. You may choose one of the following

3

arbitration organizations and its applicable rules:  the National Arbitration Forum . . . (www.arbforum. com), the American Arbitration Association . . . (www.adr.org), or any other organization that you may choose subject to our approval.  You may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

"Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules.  The arbitrator shall apply governing substantive law in making an award.  The arbitration hearing shall be conducted in the federal district in which you reside. . . .  We will advance your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $2500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion.  Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law.  If the chosen arbitration organization's rules conflict with this Arbitration Clause, then the provisions of this Arbitration Clause shall control.  The arbitrator's award shall be *final and binding* on all parties, *except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party* requesting new arbitration *shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs*.  Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

"You and we retain any rights to *self-help remedies, such as repossession*.  You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court.  Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit.  Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Clause shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.  *If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made, the remainder of this Arbitration Clause shall be unenforceable*."  (Italics added.)

In August 2011, Trabert filed an opposition to Portfolio's motion, arguing:  (1) Portfolio did not meet its burden to produce admissible evidence of a valid and enforceable arbitration clause; and (2) the arbitration provision was procedurally and substantively unconscionable.  On the substantive unconscionability claim, Trabert raised

4

several arguments, including that the agreement was not mutual because it excluded certain remedies (small claims court and repossession) that would be used only by Portfolio.[2]

Trabert presented evidence that the National Arbitration Forum no longer administers consumer arbitrations and submitted documents relating to the American Arbitration Association (AAA) rules and fee schedules. Trabert also submitted the declaration of his counsel, who said that arbitrator and expert fees "usually run in the $400 and $600 per hour range" and that "[f]iling and service fees alone for arbitration are often well in excess of $2,500." Trabert's counsel also said that based on his extensive experience, he has "found that the vast majority of car dealers in California use an arbitration clause"; consumers are generally "surprised" regarding the existence of this clause on the back of the preprinted contract document; and he has "never seen a dealership allow a customer to change pre-printed language on a contract, even if asked."

In reply, Portfolio argued that even if there was a minimal level ("a 'bit' ") of procedural unconscionability based on the nature and form of the purchase agreement, the challenged provisions were not substantively unconscionable.

After considering the parties' submissions and conducting a hearing, the court denied Portfolio's motion to compel arbitration based on its conclusion that the provision

---

2    Although the provision contained a class action waiver, Trabert did not argue the waiver was unconscionable. (See *AT&T Mobility LLC v. Concepcion* (2011) __ U.S. __ [131 S.Ct. 1740] (*Concepcion*).)

was substantively and procedurally unconscionable.  The court explained its reasoning as follows:

> "[T]he plaintiff was not given a meaningful opportunity to negotiate or reject the terms of the contract. . . . [¶]  The clause is contained on the back of a lengthy contract of adhesion.  The contract document contains single-spaced small print and measures over 2 feet in length.  Furthermore, the placement of the arbitration clause is questionable.  A review of the contract shows that Plaintiff was required to review and sign in ten different locations on the front of the contract before the contract was operative.  Nothing on the back of the contract, which includes the arbitration clause, required a signature or even initials.  While the front of the contract states 'you acknowledge that you have read both sides of this contract, including the arbitration clause on the reverse side,' this particular notification did not require Plaintiff to sign or initial that he read or even saw it.  The failure to draw attention to the provision via signature or initials is questionable and contributes to the procedural unconscionability of the arbitration clause.
>
> "The Court considers the arbitration clause substantively unconscionable for several reasons.  In addition to the arguments set forth by Plaintiff, the terms of the clause are one-sided.  For instance, it states '[y]ou and we retain any rights to self-help remedies, such as repossession,' which provides a benefit to Defendant only.  Additionally, '[y]ou and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction. . . .'  Again, this fails to assist a plaintiff seeking injunctive relief, which is unavailable in small claims court.  Additionally, it states '[n]either you nor we waive the right to arbitrate by using self-help remedies or filing suit,' which again provides Defendant with significant tactical and remedial advantages unavailable to Plaintiff."[3]

Portfolio filed a notice of appeal in September 2011.  While the appeal was pending, the California Supreme Court granted petitions for review of two Court of

---

[3]     The court also found the arbitration clause was illusory because it "does not really mandate arbitration of disputes."  Trabert does not suggest this finding provides an alternate basis to uphold the court's order.  We thus do not further discuss this finding.

Appeal decisions (*Sanchez* and *Goodridge*) in which the courts held the same arbitration provision was substantively and procedurally unconscionable. (See fn. 1, *ante*.) This court authored the *Goodridge* decision. Additionally, several federal courts (in unpublished decisions) found identical arbitration provisions in vehicle sale contracts to be unconscionable (see, e.g., *Trompeter v. Ally Financial, Inc.* (N.D.Cal. June 1, 2012, No. C 12-00392 CW) 2012 WL 1980894 (*Trompeter*); *Lau v. Mercedes-Benz USA, LLC* (N.D.Cal., Jan. 31, 2012, No. CV 11-1940 MEJ) 2012 WL 370557 (*Lau*); see also *Mance v. Mercedes-Benz USA* (N.D.Cal., Sept. 28, 2012, No. CV 11-03717 LB) 2012 WL 4497369 [substantively but not procedurally unconscionable])*,* and at least one California Court of Appeal (in a published decision) rejected an unconscionability challenge (*Flores v. West Covina Auto Group, LLC* (2013) 212 Cal.App.4th 895).

## DISCUSSION

### I. *Applicable Legal Principles*

The parties' agreement is expressly governed by the Federal Arbitration Act (FAA), which reflects a strong federal policy favoring the enforcement of arbitration agreements. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) State laws inconsistent with the federal act's provisions and objectives are preempted. (*Perry v. Thomas* (1987) 482 U.S. 483, 489.)

In 2011, the United States Supreme Court reiterated the strong public policy favoring the enforceability of arbitration agreements under the FAA and reaffirmed that a state law contract defense is unenforceable if it applies only to arbitration or if it derives

7

its meaning from the fact that an agreement to arbitrate is at issue. (*Concepcion, supra*, 131 S.Ct. at pp. 1745-1746.) The court further made clear that the principal purpose of the FAA is to " 'ensur[e] that private arbitration agreements are enforced according to their terms.' " (*Id.* at p. 1748.) However, the Supreme Court also recognized that state laws regarding arbitration are enforceable to the extent they are not in conflict with the FAA. (*Ibid.*; see *Doctor's Associates, Inc. v. Casorotto* (1996) 517 U.S. 681, 687; *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 498.)

One basis for revoking a contract under California law is a showing that the contract is unconscionable. This unconscionability defense is codified in Civil Code section 1670.5, subdivision (a), which states: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause . . . ."

Following *Concepcion,* the California Supreme Court reaffirmed that this statutory unconscionability defense " 'may be applied to invalidate arbitration agreements without contravening' the FAA." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle*).) The *Pinnacle* court also reiterated well-settled principles governing the analysis of unconscionability claims under California law: "Unconscionability consists of both procedural and substantive elements. The procedural element addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. [Citations.] Substantive unconscionability pertains to the fairness of an agreement's

8

actual terms and to assessments of whether they are overly harsh or one-sided.

[Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' [Citation.] [¶] The party resisting arbitration bears the burden of proving unconscionability. [Citations.] Both procedural unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on ' "a sliding scale." ' [Citation.] '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Id.* at pp. 246-247.)[4]

Unconscionability is ultimately a question of law, which we review de novo when no meaningful factual disputes exist as to the evidence. (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1567.) We review the court's resolution of disputed facts for substantial evidence. (*Ibid.*) When the trial court makes no express findings, we infer that it made every implied factual finding necessary to support its order and review those implied findings for substantial evidence. (*Ibid.*)

_____

4    Although the *Pinnacle* court did not specifically discuss the *Concepcion* decision in its unconscionability analysis, *Concepcion*'s impact on this state's unconscionability rules is before the California Supreme Court in the *Sanchez* case. (See fn. 1, *ante*.) Until our high court provides different standards, we adhere to settled rules for enforcing arbitration agreements. (See *Lau, supra*, 2012 WL 370557, p. *7 ["*Concepcion* does not affect the traditional analysis used to determine whether an arbitration clause is unconscionable"].)

## II. *Procedural Unconscionability*

Procedural unconscionability requires oppression or surprise. " 'Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice.' [Citation.] Surprise is defined as ' "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." ' [Citation.]" (*Gatton v. T-Mobile USA, Inc.* (2007) 152 Cal.App.4th 571, 581, fn. omitted (*Gatton*).)

On the record before us, we conclude there is a reasonable basis supporting the trial court's findings of oppression and surprise. The industry-drafted purchase agreement is contained on a lengthy two-sided preprinted form that is about two feet long. Both sides of the agreement are filled with legal verbiage and numerous admonishments. The arbitration provisions are on the bottom of the back side of the form. Trabert signed the front of the document in about 10 different places, but there are no signatures on the back of the document, nor is there any indication that Trabert saw or read the back of the document containing the arbitration provisions. Numerous courts have found contract provisions to be procedurally unconscionable under similar circumstances. (See, e.g., *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89 (*Gutierrez*); *Newton v. American Debt Services, Inc.* (N.D.Cal. 2012) 854 F.Supp.2d 712, 724; *Trompeter, supra*, 2012 WL 1980894, pp. *3-*4; *Lau, supra*, 2012 WL 370557, pp. *8-*9; see also *Gatton, supra*, 152 Cal.App.4th at pp. 581-586.)

As its primary appellate argument, Portfolio contends Trabert did not meet his burden to show surprise or oppression because he never filed a declaration explaining the

10

circumstances surrounding his execution of the purchase agreement. We agree the specific facts of the transaction are highly relevant in determining the existence and degree of procedural unconscionability. However, under the particular circumstances here, the absence of a declaration is not fatal to Trabert's procedural unconscionability challenge.

First, Portfolio forfeited the argument by failing to raise it in the trial court proceedings. Although Portfolio mentioned in a footnote in its trial court reply brief that Trabert had not presented evidence to dispute Portfolio's claim that he had choices with respect to the purchase decision, Portfolio never argued that Trabert could not establish procedural unconscionability unless he submitted a declaration discussing the facts surrounding his execution of the agreement. On this record, Trabert did not have a fair opportunity to respond factually to Portfolio's argument and thus we deem the argument to be waived. (See *Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 696-697.)

Additionally, the courts have recognized that "[a]bsent unusual circumstances, evidence that one party has overwhelming bargaining power, drafts the contract, and presents it on a take-it-or-leave-it basis is sufficient to demonstrate procedural unconscionability . . . , even if the other party has market alternatives." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 109; accord, *Gatton, supra*, 152 Cal.App.4th at p. 586; *Pardee Construction Co. v. Superior Court* (2002) 100 Cal.App.4th 1081, 1088-1090.) The record before us supports that Trabert was the substantially weaker party in the transaction. Trabert purchased a used vehicle for $16,709.87 at 18.45 percent

interest from a retail automobile dealer, and the sales contract was a preprinted standard industry form document. Even without a supporting declaration, it is reasonable to infer that the transaction was the typical consumer-dealer contract with standard terms dictated by the automobile dealership and presented on a "take-it-or-leave-it" basis. This was supported by Trabert's counsel's declaration (which was unchallenged by Portfolio in the proceedings below) that in the typical automobile purchase transaction, dealers do not allow customers to modify preprinted language or engage in negotiation over the nonprice terms.

In this regard, Portfolio's reliance on *Crippen v. Central Valley RV Outlet* (2004) 124 Cal.App.4th 1159 is misplaced. In *Crippen,* the plaintiff purchased a used motor home from a dealer under a contract that contained an arbitration agreement on a separate attached page. (*Id.* at pp. 1162-1163, 1165.) The court found the plaintiff failed to meet his burden to show procedural unconscionability based on two factors. (*Id.* at pp. 1165-1166.) First, the plaintiff did not "introduce or rely on any evidence of the circumstances surrounding the execution of the agreement, so he could not show inequality of bargaining power, lack of negotiation, or lack of meaningful choice." (*Id.* at p. 1165.) Second, the court found the form of the document did not "show any procedural unconscionability" because the "[a]rbitration [a]ddendum was not set in small type or hidden in a prolix form. It was printed on a separate page, in ordinary type, with 'Arbitration Addendum' on top, and was *signed separately* by plaintiff." (*Id.* at p. 1165, italics added.)

12

The circumstances here are materially different. Unlike the purchase of a motor home, it can be reasonably presumed that when a consumer purchases a used vehicle for $16,709.87 with 18.45 percent interest under an industry-drafted contract, the consumer was the economically weaker party and had no meaningful opportunity to negotiate the standard terms (other than price). (See *Concepcion, supra*, 131 S.Ct. at p. 1750 ["the times in which consumer contracts were anything other than adhesive are long past"].) Equally significant, this case differs from *Crippen* because the arbitration clause in *Crippen* was plainly set forth on a separate page and was separately acknowledged and signed by the plaintiff. Here, the arbitration clause was on the back page on a prolix form with no space for a signature or acknowledgment by the buyer.

Portfolio alternatively argues that Trabert could not have been "surprised" by the arbitration requirement because a clause on the front side of the contract "alerted" him to the arbitration provision on its reverse side. Specifically, towards the bottom of the front side of the form and on the far right of the printed page, the following provision appears in capital letters (although in substantially smaller type than what appears here):

> "YOU AGREE TO THE TERMS OF THIS CONTRACT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT. YOU ACKNOWLEDGE YOU HAVE READ BOTH SIDES OF THIS CONTRACT, INCLUDING THE ARBITRATION CLAUSE ON THE REVERSE SIDE. BEFORE SIGNING BELOW, YOU CONFIRM THAT YOU RECEIVED A COMPLETELY FILLED-IN COPY WHEN YOU SIGNED IT."

The trial court did not err in finding this clause would not have notified a reasonable consumer of the existence of the arbitration clause. There is no provision for

13

Trabert's signature or initials under or adjacent to that language. Rather, his signature appears on the opposite side of the page under a larger, boxed-in provision regarding the lack of a cooling-off period that appears to the left of the quoted language in the two-thirds width of the page adjacent to the left margin. Contrasted with the numerous signature lines on the front of the document, the lack of such lines adjacent to this provision or next to the arbitration provision on the back of the document supports a conclusion that the arbitration provision was not presented in a manner that would trigger the consumer to review the detailed arbitration rules before signing the purchase agreement.

Portfolio argues that automobile dealers are statutorily mandated to include copious amounts of information in a sales contract and the contract here satisfies the legal requirements regarding content and print size. (See Civ. Code, §§ 2982, 2981.9.) Although we agree with these observations, there is no statutory requirement that the arbitration provision be placed on the bottom of the back of the form without any provision for a consumer signature or initials to ensure the buyer has read and/or understood the provision. Because the arbitration provision was contained on the back of the contract containing dense contractual language without any evidence that Trabert would have been reasonably alerted to this clause before signing and consenting to the agreement, the record supports a finding that Trabert was surprised by the provision.[5]

---

[5] In reaching our procedural unconscionability conclusion, we do not find material the fact that the contract did not attach the specific rules that would govern an arbitration. The omission of these rules does not contribute to our unconscionability finding.

Based on the nature of the transaction, the form contract, the specific location of the arbitration provision within that contract, and counsel's declaration, we conclude there was a sufficient showing of oppression and surprise to establish a moderate level of procedural unconscionability. However, this is not the end of the analysis because a contract is unconscionable only if it is both procedurally and substantively unconscionable.

### III. *Substantive Unconscionability*

Portfolio contends the court erred in finding the arbitration provision substantively unconscionable. Trabert counters that several portions of the arbitration agreement are one-sided and unduly oppressive: three concern the finality of the arbitrator's decision and one concerns the parties' rights to seek relief outside the arbitration process thorough self-help remedies or small claims court.

We reject Trabert's contention regarding the self-help and small claims court remedies. As explained, there is nothing unfair or unreasonable in allowing the parties to retain their rights to these remedies outside the arbitration process. But we conclude the other challenged provisions pertaining to the finality of the arbitration decision are moderately unconscionable because they primarily benefit the economically stronger party and substantially burden the weaker party. Viewing together the moderate levels of procedural and substantive unconscionability, we determine these provisions cannot be enforced. However, because the objectionable provisions are contained solely in two sentences of the lengthy arbitration agreement and pertain to a single part of the arbitration clause (concerning the finality of the arbitration award), they can potentially

15

be severed from the remaining portions of the agreement. We thus remand for the trial court to exercise its discretion on the severance issue.

### A. *Summary of Substantive Unconscionability Standard*

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided. [Citations.] A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience." ' [Citation.]" (*Pinnacle, supra*, 55 Cal.4th at p. 246.) Moreover, even though a provision is unduly one-sided, it may not be unconscionable when the party who is imposing the provision offers a legitimate business justification based on " 'business realities.' " (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 117-118.) However, " 'unless the "business realities" that create the special need for such an advantage are explained in the contract itself,' " they " 'must be factually established.' " (*Id*. at p. 117.) In conducting the substantive unconscionability analysis, we are required to consider the circumstances at the time the agreement was executed, and not the particular dispute between the parties. (Civ. Code, § 1670.5; *American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386, 1391.)

In our prior *Goodridge* decision, we expressly declined to apply the "shock the conscience" standard in examining whether the arbitration provision was unconscionable because it was so one-sided. (See fn. 1, *ante*.) However, the California Supreme Court has since made clear that this standard governs the substantive unconscionability analysis. (*Pinnacle, supra*, 55 Cal.4th at p. 246.) Following *Pinnacle,* we apply the

16

"shock the conscience" standard and recognize that it imposes a significant burden on a party seeking to prevail on an unconscionability claim. Thus, our analysis in this case differs somewhat from our analysis in the *Goodridge* case.

B. *Self-Help and Small Claims Remedies*

The final paragraph of the arbitration provision begins: "You and we retain any rights to self-help remedies, such as repossession. You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate by using self-help remedies or filing suit."

Trabert contends this provision, in practical effect, benefits only Portfolio because car dealers/creditors are the only parties that use self-help remedies (i.e., repossession). We agree repossession is a common recourse for sellers against a defaulting buyer, and buyers do not have an equivalent self-help remedy. However, the exclusion of this remedy from the scope of arbitration is not oppressive or unfair because self-help remedies are, by definition, outside the judicial system. In other words, the fact that the buyer has no corresponding self-help remedy is not a consequence of the arbitration agreement. Under the applicable statutes and the parties' contract, a seller has the right to repossess a vehicle when the buyer defaults and required payments are not being made. (See Civ. Code, § 2983.3, subd. (b).) The creditor may exercise its rights to this self-help remedy without bringing this claim to court. There is nothing harsh or one-sided about exempting repossession from arbitration when it is exempt from the judicial process. To the extent the seller/creditor seeks to obtain a deficiency after the repossession and sale,

17

this is not a self-help remedy, and the seller/creditor could elect to bring any such claim in the arbitration process.

In this respect, Trabert's reliance on *Flores v. Transamerica HomeFirst, Inc*. (2001) 93 Cal.App.4th 846 is misplaced. In *Flores*, the plaintiffs obtained a reverse mortgage on their home from the defendant lender. (*Id.* at p. 849.) The loan documents contained a broad arbitration clause requiring arbitration of all disputes between the parties, *except* the agreement preserved the lender's right to "foreclose against the Property (*whether judicially or non-judicially . . .* ), to exercise self-help remedies *such as set-off*, or to obtain injunctive relief for the appointment of a receiver." (*Id.* at p. 850, italics added.) The court found this broad exclusion unconscionable because the lender was not required to bring any of its claims to arbitration and the "clear implication is that [the lender] has attempted to maximize its advantage by avoiding arbitration of its own claims." (*Id.* at p. 855.)

*Flores* does not support Trabert's argument that the self-help exclusion renders the arbitration clause here unconscionable. The *Flores* arbitration agreement exempted from arbitration not only claims outside the judicial process (nonjudicial foreclosure) but also claims that must be brought in court (judicial foreclosure). Thus, the broad exclusion affirmatively provided the lender with the unilateral opportunity to bring certain of its claims in court, even during the pendency of the arbitration process. The exemption for true self-help remedies (i.e., repossession) does not have a similar effect because the remedy is by definition already outside the judicial process.

18

Moreover, the recent *Pinnacle* decision creates some doubt as to the continuing validity of the *Flores* court's reasoning. (*Pinnacle, supra*, 55 Cal.4th at pp. 246-250.) In *Pinnacle*, the court rejected the argument that an arbitration provision is necessarily substantively unconscionable merely because it requires the homeowners association and property owners to arbitrate all construction disputes with the developer without requiring the developer to arbitrate any of its nonconstruction-related claims against these parties. (*Id.* at pp. 248-249.) In so concluding, the court reiterated that "arbitration clauses may be limited to a specific subject or subjects and that such clauses are not required to 'mandate the arbitration of all claims between [the parties] in order to avoid invalidation on grounds of unconscionability.' " (*Id.* at p. 248.)

Trabert also failed to meet his burden to show the exemption of small claims disputes is so harsh or one-sided that it "shocks the conscience." (See *Pinnacle, supra*, 55 Cal.4th at p. 246.) The provision is neutral and applies to any party's claim that falls within the small claims court's jurisdiction. On its face and in practical application, the provision is mutual. (See *Arguelles-Romero v. Superior Court* (2010) 184 Cal.App.4th 825, 845, fn. 21.) Vehicle purchasers frequently have small claims disputes with sellers—for example, for the cost to repair a defective condition of the vehicle—and it would not be unfair that this dispute would be exempt from arbitration. Consumers benefit from this exception by having a faster and much less expensive dispute resolution forum to resolve claims under a certain monetary amount without needing to retain an attorney. The fact that injunctive or other forms of equitable relief are not available in small claims court does not make the small claims exclusion particularly unfair or one-

19

sided with respect to the claims that do fall within the court's jurisdiction. As *Pinnacle* held, substantive unconscionability does not arise merely because an arbitration clause limits the type of claims subject to arbitration, even if those limitations mean that one party's claims are more likely to fall within the scope of the arbitration clause. (*Pinnacle, supra*, 55 Cal.4th at pp. 248-249.)

We conclude the court erred in finding the self-help and small claims court exclusions to be unconscionable.

## C. *Finality Provisions*

Trabert also challenges the fairness and mutuality of the arbitration clause's finality rules, which state:

> "The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs."

Trabert argues this provision was unconscionable in three respects: (1) it provides an exception to finality if the arbitration award is "$0" or exceeds $100,000; (2) it provides an exception to finality if the arbitration award "includes an award of injunctive relief"; and (3) it requires the appealing party to advance all costs for the second arbitration proceeding.

Reviewing these challenged provisions *together*, we find they are moderately unconscionable because they create a situation in which the arbitration appellate rules

20

benefit the economically stronger party (the automobile dealer) to the detriment of the weaker party (the consumer) and, in doing so, defeat an essential purpose of the FAA, which is to encourage efficient and speedy dispute resolution. (*Concepcion, supra*, 131 S.Ct. at p. 1749; see also *Pinnacle, supra*, 55 Cal.4th at p. 235, fn. 4.) Where, as here, an arbitration agreement provides for broad exceptions to finality and these exceptions generally favor only one party, the private and public policy advantages of the arbitration process no longer exist. Viewing the totality of the circumstances, we cannot say that Trabert fairly agreed to an arbitration process that provides for a second arbitration under the circumstances set forth in the arbitration provision.

The first exception to the finality rule is the provision that either party is entitled to compel a second arbitration before a three-person arbitration panel if the award is in excess of $100,000. Trabert argues that although this provision on its face applies to both parties, its practical effect is to favor Portfolio because Portfolio is the only party that will suffer an award against it in excess of $100,000, and the provision unfairly precludes him from appealing a monetary award that is too low but is more than zero.

We agree that Portfolio is the only party that would realistically benefit from the $100,000-plus finality exception. Even if Portfolio prevailed on a collection action with interest, the arbitration award against Trabert would not reach $100,000 because the total purchase price of this vehicle was less than $20,000 and California law generally prohibits arbitrators from awarding prevailing party attorney fees against a consumer. (Code Civ. Proc., § 1284.3.) On the other hand, if Trabert prevailed in a consumer fraud type case, an arbitration award could be more than $100,000 when considering the

21

protective consumer laws, potential statutory penalties, and prevailing attorney fee provisions in the parties' contract. Although an arbitrator is precluded from awarding prevailing party attorney fees against a consumer, this same rule does not apply where a prevailing consumer seeks to recover attorney fees against the seller/creditor. (See Code Civ. Proc., § 1284.3.)

In *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, the California Supreme Court found an arbitration agreement in an employment agreement was unconscionable because it set forth a minimum monetary appellate threshold and the practical effect was to substantially benefit the economically stronger party (the employer). (*Id.* at pp. 1071-1074; see also *Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1080 [finding unconscionable a $25,000 award minimum to trigger a de novo arbitration].) Portfolio argues that this case is different from *Little* because here either party is permitted to appeal an award of "$0" and this rule "favors the consumer, because it grants the consumer the chance to contest an award of no damages." Although the arbitration provision here contains this additional finality exception, this rule does not favor only the consumer. Although both parties are permitted to appeal a zero-damages award, this does not alter the fact that the $100,000-plus exception favors only the seller/creditor.

Portfolio also argues that the $100,000 minimum reflects a legitimate business decision because it will eliminate "outlier" awards. However, in the context of consumer actions, a $100,000 award against Portfolio is not necessarily an outlier award, particularly when considering prevailing party attorney fees that would be included in the award. Moreover, there are no equivalent exceptions for a consumer who receives an

22

"outlier" award in the form of a substantially reduced amount (that is more than zero) as compared to the value of his or her claim. It appears more likely that the drafters of the arbitration provision included the $100,000-plus finality exception to ensure that the seller/creditor would have a second chance at arbitration if an award is sufficiently large to support the expense of a second arbitration. Although this may be a reasonable business justification, this purpose would generally benefit only the appealing seller/creditor and not the appealing consumer.

In any event, we need not decide if the $100,000-plus exception is unconscionable by itself because the second finality exception (the injunction exception) raises even stronger concerns regarding the one-sided nature of the arbitration clause's finality rules. This exception provides a party with a right to compel a second arbitration before a three-person arbitration panel if the first award "*includes* . . . injunctive relief." (Italics added.) This exception does not provide equivalent appellate rights to the party who does not prevail on an injunctive relief claim.

The exception advantages only the seller/creditor. Consumers frequently seek injunctive relief because it is a remedy to protect the public from further unlawful actions by a defendant. (See *People v. Pacific Land Research Co.* (1977) 20 Cal.3d 10, 16-20; *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103-108.) When buyers bring statutory consumer claims against sellers/creditors, many of the statutes specifically provide for injunctive relief, regardless of the amount of damages/restitution awarded. Under such circumstances, a seller/creditor who receives an award against it between $0

23

and $100,000 will have the right to appeal the *entire* award if the award "includes" injunctive relief.

There is no reasonable possibility that a consumer can take similar advantage of this finality exception because it is unlikely that a car dealer/creditor will seek or obtain injunctive relief against a buyer. If a creditor seeks immediate or equitable relief after a default, the seller/creditor has the option to exercise its repossession rights or seek a writ of prohibition in superior court while the arbitration proceeding is pending. (See Code Civ. Proc., §§ 512.010, 1281.8, subd. (b).) Consumers have no equivalent rights, and must bring their claims for provisional or permanent equitable relief in the arbitration proceedings. Additionally, as one federal district court recently recognized, allowing an appeal of an arbitration award merely because it includes preliminary or permanent injunctive relief would create substantial delay, undermining the urgency of that type of remedy and defeating the goals of arbitration to provide a relatively prompt and efficient method for obtaining necessary relief. (See *Trompeter, supra*, 2012 WL 1980894, p. *6.)

Allowing the seller/creditor to challenge any arbitration award merely because it contains some form of injunctive relief, while denying the consumer the right to appeal when an injunction is denied or when the amount of the award is less than $100,000 (but more than zero), is not a slight departure from mutuality. It systematically tilts the playing field in favor of the seller/creditor. (See *Trompeter, supra*, 2012 WL 1980894, p. *6.)

The unfairness inherent in the arbitration agreement's appellate rules is further evidenced by the requirement that the appealing party *advance* the *full costs* of the second

24

arbitration, *including the costs of the three-arbitrator panel*.  Under this provision, if Trabert were to challenge an arbitration award, he would be responsible for advancing the costs and fees of that appeal for *both* parties, including the fees for the three-arbitrator panel.  Given the evidence showing the common hourly rates of private arbitrators are between $400 and $600, it is reasonable to conclude that Trabert would face the prospect of advancing a minimum of $10,000 to appeal an arbitration award.  Further, the arbitration provision does not inform Trabert of the exact amount required to file an appeal and therefore may have the effect of discouraging him from appealing.  Additionally, there is nothing in this arbitration agreement providing for a waiver of these upfront fees if Trabert could not afford to pay these fees.

Under analogous circumstances, a California Court of Appeal has held a consumer arbitration agreement unconscionable where the agreement imposed a "substantial [upfront] administrative fee" and "there [was] no effective procedure for a consumer to obtain a fee waiver or reduction." (*Gutierrez, supra*, 114 Cal.App.4th at p. 91.)  The *Gutierrez* court explained:  "A comparison with the judicial system is striking.  While imposing far lower mandatory fees, the judicial system provides parties with the opportunity to obtain a judicial waiver of some or all required court fees." (*Ibid*.)  Although *Gutierrez* arose in the context of an initial fee (rather than a fee to appeal), the logic of its holding extends to the cost provision challenged here.  If the fee for an appeal is so high that it is unlikely that the consumer could bear it, the exceptions to the finality provision are not mutually beneficial to both parties and become solely one-sided.  (See

*Lau, supra*, 2012 WL 370557, p. *10 ["[s]uch a provision places an unduly harsh burden on consumers and further discourages them from enforcing their rights"].)

Portfolio argues that in this case, unlike in *Gutierrez*, Trabert did not present any evidence that he could not afford the upfront second-arbitration fees. Generally, in evaluating the fairness of an arbitration agreement under a substantive unconscionability analysis, the ability to pay must be evaluated at the time the agreement is signed. (Civ. Code, § 1670.5; *Parada v. Superior Court, supra*, 176 Cal.App.4th at p. 1583; *Gutierrez, supra*, 114 Cal.App.4th at p. 91.) Trabert presented no evidence regarding his ability to pay fees when he signed the sales contract. We agree that the absence of this evidence is a factor in determining whether a cost provision in an arbitration agreement is unconscionable. However, even without this evidence, the lack of an effective procedure for a consumer to obtain a waiver of a cost requirement before the consumer must pay *in advance* the entire costs of an arbitration proceeding*, which include the costs of a three-arbitrator panel*, is an important factor in the unconscionability analysis. (See *Gutierrez, supra*, 114 Cal.App.4th at pp. 90-92.)

Portfolio relies on *Green Tree Financial Corp.-Ala. v. Randolph* (2000) 531 U.S. 79 (*Green Tree*), to argue that arbitration costs are not relevant to show unconscionability. In *Green Tree*, the plaintiff asserted a federal statutory consumer claim against a lender and contended the arbitration agreement between the parties (which was silent on the cost of arbitration) was unenforceable because the arbitration would be too expensive. (*Id.* at pp. 82-84.) Rejecting this claim, the United States Supreme Court held that an arbitration agreement silent on arbitration costs is not per se

26

unenforceable without a showing the plaintiff will actually be required to bear the costs of the proceeding. (*Id.* at pp. 89-92.) The court reasoned that although "[i]t may well be that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights," the litigant bears the burden of showing the likelihood of incurring such costs. (*Id.* at pp. 90-91.) Under this rule, the court found "the record does not show that [the litigant] will bear such costs if she goes to arbitration" and thus the " 'risk' that [the litigant] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." (*Ibid.*; see also *Parada v. Superior Court, supra*, 176 Cal.App.4th at pp. 1575-1576.)

*Green Tree* does not support Portfolio's argument that a requirement that a consumer bear the advance costs of a second arbitration has no relevance to California's unconscionability analysis or that we cannot consider the issue without a full factual record of the consumer's ability to pay. Here, unlike in *Green Tree*, the arbitration agreement provides that if Trabert wishes to appeal an award, he *will* be required to pay in advance all costs, which (as explained above) are certain to be substantial. This is a relevant factor in the unconscionability analysis.[6]

In sum, we have determined that when considered together, three provisions relating to the finality of the arbitration award combine to deny Trabert the mutual

---

[6]     Trabert also argues for the first time in his respondent's brief that the arbitration agreement is unconscionable based on the initial costs he must bear to initiate an arbitration. We decline to exercise our discretion to reach this issue, which was raised for the first time on appeal. (See *Crippen, supra*, 124 Cal.App.4th at p. 1167, fn. 1; *Resolution Trust Corp v. Winslow* (1992) 9 Cal.App.4th 1799, 1810.)

benefits of the arbitration agreement and are substantively unconscionable: (1) the exception to finality for awards that are more than $100,000; (2) the exception to finality for an award that "includes" injunctive relief; and (3) the requirement that the appealing party advance both parties' costs for the second arbitration with a three-arbitrator panel. The parties' arbitration agreement provides a streamlined and efficient procedure when it serves the needs of the seller/creditor, but when such needs are not served—for example when the award is more than $100,000 or includes injunctive relief—the buyer is then subjected to delay and complexity. Moreover, without any waiver for a consumer who cannot afford to pay for an appeal, the requirement that the appealing party advance the full cost of the arbitration (including the fees for the three arbitrators) makes it likely that the seller/creditor will be the only party to take advantage of the appeal procedures. Considered together, these three challenged provisions are moderately substantively unconscionable. Under the sliding-scale test, these provisions cannot be enforced because we have found that the contract was also procedurally unconscionable.

## IV. *Severance*

Portfolio contends the offending provisions can be severed from the remainder of the arbitration provision and the remaining provision can be enforced.

Civil Code section 1670.5, subdivision (a) provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause so as to avoid any unconscionable result." A

28

trial court has broad discretion to determine whether severance is appropriate in a particular case. (*Murphy v. Check 'N Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144.)

In this case, Portfolio never asked the trial court to exercise its discretion to sever the unconscionable provisions. Typically this would constitute a waiver. However, because we have found the court erred in finding the self-help/small-claims exceptions unconscionable but that certain other provisions are unconscionable, we conclude the severance analysis has necessarily changed. Accordingly, we remand to permit the court to consider the severance issue.

## V. *Trabert's Additional Argument*

We reject Trabert's argument that the court erred in finding Portfolio adequately proved the arbitration agreement by submitting a copy of the sales contract without specific foundational information. For purposes of the motion to compel, substantial evidence supports the authenticity of the document and the trial court's factual finding that the parties entered into this purchase agreement.

DISPOSITION

The court is ordered to vacate its order denying Portfolio's motion to compel arbitration and to consider whether to sever the provisions found unconscionable in this opinion. If the court finds the unconscionable provisions can be severed, the court should enforce the remainder of the arbitration agreement and grant Portfolio's motion to compel arbitration.

The parties to bear their own costs on appeal.

HALLER, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.